IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERALDINE SCHRINER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | No. 3:08-CV-2042-N (BF) |
| | § | ECF |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation pursuant to 28 U.S.C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying the claim of Geraldine Schriner ("Plaintiff" or "Schriner" or "claimant") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The Court considered Plaintiff's Brief, filed May 11, 2009, Defendant's Brief, filed June 9, 2009, and Plaintiff's Reply Brief, filed July 24, 2009, in addition to thoroughly reviewing the complete record.

**Procedural History**

After full administrative review and a hearing, Administrative Law Judge ("ALJ") Charlene Seifert issued a 1998 decision denying Plaintiff benefits. (Tr. 5-6.) The Appeals Council declined review. (*Id.*) In 2002, this Court recommended that the District Court reverse ALJ Seifert's decision on the grounds that (1) the record contained evidence that Plaintiff's obesity was more than a slight abnormality having such minimal effect on her that it would not be expected to interfere with her ability to work, irrespective of her age, education or work experience; (2) the ALJ did not

consider whether Plaintiff's severe impairments, "systemic lupus erythematosus ("SLE") and/or fibromyalgia," as affected by her obesity, met or equaled the amended listings; (3) the record contained evidence that obesity affected Plaintiff's musculoskeletal and other systems; and (4) "the ALJ erred by not considering obesity at every step in the process," beginning her disability analysis "at step two of the sequential five-step disability inquiry." *Schriner v. Commissioner*, No. 3:01-CV-01518-H (BF), (N.D. Tex.  Jan.  15, 2003) (FC&R of the USMJ).  The District Court adopted the findings, conclusions, and recommendation of the United States Magistrate Judge to reverse the case and to remand it to the Commissioner.  *Id*.  In that civil action, the Agency did not question nor did the Court  set aside ALJ Seifert's finding that Plaintiff suffered from the "severe" medically-determinable impairments of SLE and/or fibromyalgia. (Tr. 30.)  Rather, this Court remanded with instructions that the ALJ assess the effects of Plaintiff's obesity on the severe impairments ALJ Seifert found, and, if warranted, add any limiting effects from obesity to her Residual Functional Capacity ("RFC") Finding.  The Appeals Council issued instructions that the order be followed. (Tr. 507-08.)

In 2003, ALJ Walter Orr convened the first hearing on remand.  (Tr. 435-59.)  ALJ Orr issued the second decision denying benefits in 2005.  (Tr. 498-506.)  ALJ Orr totally disregarded the orders on remand and ALJ Seifert's findings regarding Plaintiff's severe impairments.  ALJ Orr found that obesity was Plaintiff's only severe impairment. (Tr. 505.)  In 2006, the Appeals Council reversed and remanded ALJ Orr's decision (the "ALJ's Decision") for the limited purpose of requiring that more specific vocational evidence be obtained.  (Tr. 578-79.)  The case went back to ALJ Orr.  After an additional hearing in 2007, ALJ Orr issued the third decision denying benefits. (Tr. 380-88, 460-75, 476-94.)  Plaintiff then petitioned the Appeals Council to review the ALJ's

Decision.  She furnished the Appeals Council with a new, detailed medical narrative written by one

of her treating physicians, Dr. Mark Haman.  (Tr. 337-39.)  Dr. Haman had not previously offered

an opinion.  The Appeals Council refused to grant review.  Dr. Haman then answered medical

interrogatories that addressed the Appeals Council's concern that Dr. Haman had not treated

Plaintiff before the date that her insured status expired ("date last insured" or "DLI").  Dr. Haman

explained  that Plaintiff was his patient, that he had reviewed her older medical records, and that he

could offer his opinion "with reasonable medical probability" with respect to her impairments and

restrictions extending several years into the past.  He assured the Appeals Council that Plaintiff's

impairments had existed at a disabling level for many years and that they reached disabling

proportions before June 30, 1995.  Nevertheless, on October 24, 2008, the Appeals Council declined

to review the ALJ's Decision, instructing Plaintiff to take her claims of legal error to federal court

within 60 days.  (Tr. 323-325.)  Plaintiff timely filed this appeal of the Commissioner's decision.

## Background

The ALJ determined that Plaintiff's insured eligibility expired on June 30, 1995, and

concluded that she could not recover disability benefits unless she became disabled on or before that

date. (Tr. 382.)  Plaintiff was born on November 19, 1947, and was 47 years old on her date last

insured.  (Tr. 77, 386.)   She is therefore a "younger person" for purposes of 20 C.F.R. § 404.1563,

although she is now 63 years of age.  Plaintiff has "at least a high school education," as defined in

20 C.F.R. § 404.1564.21.

### Medical History

Plaintiff has been diagnosed with obesity, osteoarthritis of the knees, depression, and an immunological disorder variously referred to as SLE or collagen vascular disease and/or fibromyalgia.

### Medical Expert ("ME") and Vocational Expert ("VE") Testimony

The record in this case contains the testimony of two MEs.  Dr. Sterling Moore ("Dr. Moore"), an internist and rheumatologist, testified at the December 1997 hearing, while Dr. Stephen Eppstein ("Dr. Eppstein"), an internist, testified at the November 2003 hearing.  (Tr. 289-308, 455-59.)  ALJ Orr adopted Dr. Eppstein's opinion, finding that Plaintiff is limited to a restricted range of sedentary work and not disabled within the framework of the Medical-Vocational Rule 201.21. ALJ Orr did not find any of the severe impairments to which the specialist, Dr. Moore, attested. ALJ Orr did not evaluate–or even mention–Dr. Moore's testimony.

VE Thomas Irons testified at Plaintiff's December 1997 hearing.  (Tr. 308-21.)  VE Russell Bowden appeared at the November 2003 hearing but did not testify.  (Tr. 435-59.)  VE Joyce Shoop testified at the April 2007 hearing.  (Tr. 460-75.)  VE Russell Bowden testified at the December 2007 hearing.  (Tr. 476-94.)

### Issues Presented

1.  Did ALJ Orr violate this Court's remand order or, more broadly, the "law of the case doctrine," by tacitly renouncing ALJ Seifert's original finding that Plaintiff has SLE and/or fibromyalgia, and replacing it with a finding that her only impairment was obesity?

2.  Did the Appeals Council err in concluding that Dr. Haman's medical narrative and his answers to three medical interrogatories – evidence not available to ALJ Orr – failed to constitute "new and material" evidence justifying remand?

4

3.  Did ALJ Orr's failure to evaluate the effects of Plaintiff's mental impairment and her depression in accordance with the "psychiatric review technique" regulation justify reversal?

4.  Did ALJ Orr sufficiently explain his finding that Plaintiff did not suffer from osteoarthritis of the knees to allow "meaningful appellate review?"

5.  Did ALJ Orr properly evaluate the medical opinions indicating that Plaintiff had osteoarthritis of the knees during the relevant time period?

6.  Did ALJ Orr err reversibly by failing to follow proper legal standards in evaluating the medical opinions of Plaintiff's long-time treating physician, Dr. Beard?

## **Standard of Review**

A claimant must prove that she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

(1)     an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2)     an individual who does not have a "severe impairment" will not be found to be disabled;

(3)     an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4)     if an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made; and

(5)     if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's findings is limited to (1) whether the decision to deny benefits is supported by substantial evidence and (2) whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). No deference is afforded the Secretary's legal determinations; review of legal issues is *de novo*. *See Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981). "[W]hen the fact-finder [the ALJ] has failed to employ the proper legal standard in making its determination the finding may not stand" if the claimant was prejudiced. *Ferran v. Flemming*, 293 F.2d 568, 571 (5th Cir. 1961). The facts must be evaluated by the ALJ in the light of correct legal standards to entitle the ALJ's findings to the insulation of the substantial evidence test. *Id.*

Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind

to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. Disability decisions "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (calling this a "simple but fundamental rule of administrative law"). District courts "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257 (10th Cir. 2005); *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) (reversing a disability decision on the basis that the ALJ failed to explain the basis for his finding that the claimant did not meet a "listing" at step three in sufficient detail to permit "meaningful appellate review").

## Analysis

Plaintiff presents six component issues which demonstrate serious prejudicial legal errors on remand. The ALJ violated the law-of-the-case doctrine and the mandate rule. Further, the Appeals Council erred in concluding that neither Dr. Haman's medical narrative, nor his answers to three medical interrogatories constituted "new and material" evidence of Plaintiff's condition before her DLI. Additionally, the ALJ failed to consider the effects of Plaintiff's mental impairment and evaluate her depression in accordance with the "psychiatric review technique" regulation, justifying reversal. Moreover, the ALJ erred by failing to supply an explanation of his finding that Plaintiff did not suffer from osteoarthritis of the knees before her DLI that is sufficiently detailed to permit meaningful appellate review and failed to properly evaluate the medical opinions

indicating that Plaintiff had osteoarthritis of the knees during the relevant time period. Finally, the ALJ erred reversibly by failing to follow proper legal standards in evaluating the medical opinions of Plaintiff's long-time treating physician, Dr. Beard. Because each of these legal errors prejudiced Plaintiff, the District Court should reverse the Commissioner's decision. The Court will discuss these prejudicial legal errors seriatim.

### The ALJ's Violation of the Law-of-the Case and the Mandate Rule

The law-of-the-case doctrine prohibits a court from reexamining on remand an issue of law or fact already decided on appeal. *Brown v. Astrue*, 597 F. Supp. 2d 691, 695 (N.D. Tex. 2009). The mandate rule, a corollary of the doctrine, provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of the appellate court. *Id.* "In Social Security proceedings, the district court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court of appeals' position with respect to a trial court." *Id.* at 696 n.3 (quoting *Ischay v. Barnhart*, 383 F. Supp.2d 1199, 1215 (C.D. Cal. 2005)). The Commissioner is not entitled to endless opportunities to apply the proper legal standard correctly and gather evidence to support his conclusion. *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996).

Here, the Appeals Council and the ALJ clearly violated not only the spirit but the letter of this Court's remand order. In 2002, this Court reversed ALJ Seifert's decision on the basis that she had failed to properly evaluate the effects of Plaintiff's obesity. In that civil action, Plaintiff did not challenge, the Agency did not question, and this Court did not set aside ALJ Seifert's finding that Plaintiff suffered from the "severe" medically determinable impairments of "systemic lupus erythematosus [SLE] and/or fibromyalgia." (Tr. 30.) Rather this Court remanded with instructions

8

that the ALJ assess the effects of her obesity, given her severe impairments of SLE and/or fibromyalgia, and, if warranted, add any limiting effects from obesity to her RFC Finding. The Appeals Council instructed that the remand order be followed.  (Tr. 507-08.)

In 2003, ALJ Orr convened the remand hearing, and he issued the decision denying benefits in 2005.  (Tr. 434-39, 498-506.)  Inexplicably, the ALJ violated the law of the case by reexamining and reciding on remand issues that ALJ Seifert had already decided.  Moreover, he violated the mandate rule by failing to apply the effects of obesity to Plaintiff's  severe impairments as ordered by this Court and the Appeals Council.  The ALJ picked and chose evidence from the record to support a finding that Plaintiff was not disabled.  Plaintiff was prejudiced by these  legal errors, requiring reversal of the ALJ's decision.

### The Appeals Council's Legal Error in Consideration of Dr. Haman's Medical Narrative and Answers to Three Medical Interrogatories

The Appeals Council must consider evidence presented to it for the first time when the evidence is new and material.  *Ivy v. Barnhart*,  No. 3:06-CV-0212-N at 8-9 (N.D. Tex.  Jan.  22, 2007 ( "Findings, Conclusions, and Recommendation of United States Magistrate Judge") (Stickney, J.)(citing *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003)); *see* 20 C.F.R. § 404.970(b).  Moreover, the Appeals Council is bound to follow the same rules for considering medical opinion evidence as the rules that bind administrative law judges.   20 C.F.R. § 404.1527(f)(3).  The terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.  In this circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."  *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen*, 833 F.2d 529, 531 (5th Cir.1987). [Footnotes omitted.]

9

The Appeal Council's decision declining to grant review of an ALJ's decision is part of the Agency's "final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). As such, it is reviewable *de novo* in federal court just as the ALJ's decision is reviewable. *Id.* The Appeals Council's decision not to grant review must stand or fall on its reasons. *Ivy*, No. 06-212 at 8 (refusing to credit the Agency's "post hoc rationalization" that the new doctor's statement was "a conclusory opinion that is not supported by objective evidence" because the Appeals Council did not give that as a reason).

In this case, the Appeals Council failed to consider Dr. Haman's new evidence because "[e]vidence of record pertaining to a mental impairment is dated after her DLI and therefore is not relevant to a finding of disability for the period at issue." This is legal error. Dr. Haman's June 6, 2008 letter stated that "psychological or emotional factors play a part in [Plaintiff's] medical picture," and that he does "suspect some connection between her emotional state and physical complaints." (Tr. 330.) In the Questionnaire which supplemented the letter, Dr. Haman clarifies that these psychological or emotional factors had existed since January 1, 1994. (Tr. 332.) Dr. Haman's assessment is based upon his review of the records, MRI reports, and laboratory findings dating back to 1991-92 and his own experience as Plaintiff's treating physician. (Tr. 330.) He states that he finds a "complicated medical picture with numerous complaints of pain and discomfort dating back to 1994" and that "her condition seems to have gradually declined since 1991-92."

The policy statements in Social Security Ruling ("SSR") 83-20 are binding on all components of the Administration. 20 C.F.R. 402.35(b)(1). "In some cases, it may be possible, based on the medical evidence, to reasonably infer that the onset of a disabling impairment occurred sometime prior to the date of the first recorded medical examination." SSR 83-20. Retrospective medical

diagnoses constitute relevant evidence of pre-expiration disability. *See Likes v. Callahan*, 112 F.3d 189-190 (5th Cir. 1997); *Jones v. Chater*, 65 F.3d 102 (8th Cir. 1995); *Newell v. Commissioner of Soc. Security*, 347 F.3d 541, 547 (3d. Cir. 2003). The terms of 20 C.F.R. § 404.1527(f)(3) obligate the Appeals Council  to "follow the same rules for considering [medical] opinion evidence as administrative law judges follow." *Id*. The Appeals Council erred because it: (1) did not perform a six-factor evaluation of Dr. Haman's opinions, (2) failed to apply the principle that treating-source opinions are entitled to great weight, even when there is contrary evidence that deprives them of controlling weight, and (3) treated Dr. Haman's numerous distinct conclusions about "what the claimant can still do despite her impairment" as though it were a single opinion – which is contrary to the terms of SSR 96-5p, 1996 WL 374183 at *4. SSR 96-5p provides in pertinent part that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." SSR 96-5p. Moreover, the Appeals Council failed to properly consider the fact that Dr. Haman's opinions are those of a treating physician directly assessing Plaintiff's conditions before her DLI and inferring a disability onset date of January 1, 1994. Plaintiff was clearly prejudiced by the Appeal Council's errors, requiring reversal of the ALJ's decision.

**The ALJ's Failure to Evaluate the Effects of Plaintiff's Mental Impairment and His Failure to Evaluate Plaintiff's Depression in Accordance with the "Psychiatric Review Technique" Regulation**

An ALJ may not find an illness "non-severe" without explaining the basis for the finding in a manner that complies with the legal standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *See Bragg, v. Com'r of SSA*, 567 F. Supp. 2d 893, 906-07 (N.D. Tex. 2008). In this case, ALJ Orr merely noted the Fifth Circuit's holding in *Stone*, immediately followed by the regulatory definition. He did not apply *Stone* as required by the Fifth Circuit Court of Appeals. The ALJ stated that the Fifth Circuit:

> held that an impairment can be considered non-severe only if it is a slight abnormality having such minimal effect that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. (20 CFR § 404.1521).

(Tr. 381-82.) In finding that Plaintiff's only severe impairment was obesity, the ALJ adopted the opinion of a Medical Expert who never evaluated Plaintiff's mental illness because it was beyond his specialty to do so. (Tr. 457.) The ALJ failed to mention the testimony of the Medical Expert, Dr. Moore, who previously testified that Plaintiff "clearly had some depression" before her DLI and met some, but not all, of the requirements of the mood-disorder listing. (Tr. 290, 293.) Dr. Moore testified that Plaintiff's chronic fatigue was due to her depression. (*Id.*) Similarly, the ALJ did not discuss any of the medical records that describe Plaintiff's mental impairment as arising from her diagnosis of Lupus in 1992. The medical narrative submitted by Dr. Marianne Beard, Plaintiff's treating physician since 1990, describes Plaintiff as having depression in addition to SLE, joint pain, extreme fatigue, recurrent respiratory infections, fibrosis of the lungs, and optic neuritis. (Tr. 129.) The Agency-selected consulting psychologist, Dr. Jack Dial ("Dr. Dial") issued a "Full Battery

12

Psychological Report" in October, 1997, noting that Plaintiff suffered from a moderate yet chronic major depressive disorder, noting that her condition "appears to have deteriorated somewhat over the years and has impacted her general day-to-day activities of living and work." (Tr. 193.) The Minnesota Multiphasic Personality Inventory ("MMPI") that Dr. Dial administered reflected an individual who is "moderately to severely depressed," who may also be experiencing "feelings of hopelessness and helplessness," fully consistent with depression. (*Id*.) He also opined that Plaintiff is "seriously limited but not precluded" in three areas of work-related performance: (i) her ability to "deal with work stresses," (ii) her ability to "relate predictably in social situations," and (iii) her ability to "demonstrate reliability on the job." (Tr. 194-95.) Dr. Dial relied on evidence in the record that predated Plaintiff's DLI, and the tests he administered reflected features which were not of a transient nature. (*Id*.)

Plaintiff consulted Eleanor Johnson, a licensed social worker to whom Dr. Beard referred her in April 1996, for regular counseling. Ms. Johnson's diagnosis in June, 1996 was "depression due to Lupus."[2] (Tr. 181.) Ms. Johnson also assessed Plaintiff's Global Assessment of Functioning ("GAF") at that time to be at 50 (out of 100). (*Id*.) She indicated that her GAF had been no higher than 40 "in the past year."[3] (*Id*.) Ms. Johnson further stated that Plaintiff's major depression was

---

[2] *See* American Psychiatric Assoc., DIAGNOSTIC AND STATISTICAL MANUAL (4th Ed. 2000) 347 ("DSM-IV-TR")(giving 293.83 as the diagnostic code for Mood Disorder Due to Medical Condition).

[3] A GAF of 40 reflects a very low level of mental functioning for any individual who is not under inpatient psychiatric care. According to the standard diagnostic manual used by the mental-health professions, a GAF of 40 is characterized by the following: 30 to 40: Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairments in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). DSM-IV-TR at 34.

brought on by Lupus, that this was diagnosed in 1992, and that her depression is caused by the fact that "Mrs. Schriner has . . . experienced her [resulting] inability to work as a life-altering loss." (Tr. 183.)  Ms. Johnson also completed a medical source statement, concluding that Ms. Schriner's abilities to maintain concentration, perform within a schedule, maintain regular attendance, work without interruptions from psychologically-based symptoms, respond appropriately to workplace changes, and cope with work stress, were rated as "poor/none," and that this has been true "since January 1, 1994." (Tr. 182-83.)

Treating physician Dr. Haman's post-hearing medical narrative and answers to medical interrogatories reveal that Ms. Schriner has been depressed since at least 1994, and that this aggravates her fatigue and other work-related limitations.  Plaintiff testified that it is hard for her to concentrate, that she has difficulty focusing, and that she can only sustain concentration on tasks she likes (reading or drawing) for 10 to 15 minutes at a time.  (Tr. 283.)  The VE testified that someone who cannot *sustain* focus and concentration continuously for two hours at a time cannot successfully work in the competitive economy. (Tr. 491-92.)

Determinations of non-disability "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Newton*, 209 F.3d at 455.  The ALJ failed to make a reviewable *Stone*-complaint analysis of Plaintiff's mental impairments.  He failed to consider, analyze, or even to mention Plaintiff's depressive disorder and failed to make the four findings that the regulation requires him to make in the written decision.  Given the medical evidence that Plaintiff suffered from depression before her DLI, this is legal error.  Further, Plaintiff was prejudiced by this legal error.  The District Court should reverse the Commissioner's decision denying benefits.

At the November 18, 2003 hearing, the ALJ asked ME Eppstein to review the record to determine whether from 1/94 through 6/95 any listings were met and then consider the effects of her obesity, if any, on the listings. Dr. Eppstein testified that the precise diagnosis of Plaintiff's illness that began in 1991 is not entirely clear as to whether he should look under the neurologic listings or "demyelinating disorder," or whether he should look under the collagen vascular disease disorder or something like lupus. He further testified, "Those are the conditions that I find." Then, ALJ Orr adopted—without reviewable explanation—ME Epstein's opinion that Plaintiff's only severe impairment was obesity. However, the ME had testified that there can be a variance in lab testing results from periods where lupus is active or inactive, explaining the possibility of inconsistencies in diagnosing the disease. (Tr. 451.) He had also testified it could possibly account for the different testing levels in Plaintiff's case. He stated that on 3/5/92, the laboratory tests came back moderately positive for lupus. (*Id.*) The ALJ did not discuss this testimony.

With respect to whether the ALJ erred by failing to make a reviewable *Stone*-complaint analysis of Plaintiff's degenerative joint disease of the knees, the Court looks first to the testimony of MEs Dr. Moore and Dr. Epstein. Dr. Moore testified that the degree of left-knee degeneration seen on her April 1996 MRI did not "just happen overnight," and answered "probably so" to the question as to whether her knee disease had been going on "more than two years." (Tr. 299.) The ALJ's decision does not evaluate Dr. Moore's opinion in any way. In fact, it does not acknowledge or mention it.

Dr. Epstein stated that Dr. Beard's medical records indicate that Plaintiff complained of pain, especially in her knees during the time period January 1994-June 1995 and that a finding of chondromalacia is consistent with these kinds of complaints. (Tr. 447-48.) He further explained that

15

chondromalacia patella is a type of joint disease that degenerates over time. (*Id*.)   Dr. Epstein

testified that Plaintiff's degenerative joint disease in her knee was quite likely to have existed the year

or two before 4/25/96 and that obesity is something that can affect or exacerbate joint disease with

weight-bearing joints, especially the knees. (*Id*.)   The ME stated that obesity is associated with an

increased frequency of degenerative joint disease.   He noted that obesity can cause the disease, and

that a person who has degenerative joint disease will be more symptomatic.   He added that the

disease will progress more rapidly in an overweight person. (Tr. 449.)   He also stated that the disease

would be more painful in an overweight person. (*Id*.).   The ME testified that Plaintiff had bilateral

orthopedic impairment of her knees during the period in question that could well be exacerbated by

obesity.   (Tr. 458.)   Although the ALJ adopts the ME's statement that Plaintiff's only severe

impairment is obesity, he does not discuss this testimony nor does he mention the effects of Plaintiff's

obesity on her degenerative joint disease.   Plaintiff was prejudiced by this legal error, and reversal

is required.

### Did the ALJ Apply the Proper Legal Standards in Evaluating the Opinion of Plaintiff's Treating Physician, Dr. Beard? If not, was Plaintiff Prejudiced?

The ALJ gave the claimant's treating source assessments no probative value.   Unless an ALJ

shows good cause to the contrary, the ALJ must accord the testimony of the treating physician

substantial weight.   *Smith v. Schweiker*, 646 F.2d 1075, 1080-81 (5th Cir. 1981).   In *Smith*, the court

reiterated that "[i]t is not only legally relevant but unquestionably logical that the opinions, diagnosis,

and medical evidence of a treating physician whose familiarity with the patient's injuries, course of

treatment, and responses over a considerable length of time, should be given considerable weight."

*Id*.

The Commissioner's finding that Plaintiff can do sedentary work means that she is able to sit for a total of 6 hours during each 8-hour work day. *See* SSR 96-9(p). Plaintiff argues that the Commissioner failed to follow the proper legal standards for considering the opinion of Plaintiff's treating physician, Dr. Beard, that Plaintiff's "collagen vascular disease" precludes her from doing sedentary work. (Tr. 230-32.)

The ALJ is required to give controlling weight to a treating physician's opinion if the ALJ finds that opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(d)(2). In many cases, a treating physician's opinion is entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. *See* SSR 96-2p. A treating physician's opinion, however, may be disregarded when good cause is shown. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Leggett*, 67 F.3d at 566. If good cause exists, then the ALJ may accord the treating physician's opinion less weight, little weight, or even no weight. *Paul*, 29 F.3d at 211; *Leggett*, 67 F.3d at 566. "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)(citation omitted). If the ALJ does not accord a treating-doctor's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the evidence in the case record. *See* 20 C.F.R. § 404.1527(d)(2). The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. The ALJ must explain the weighing in the decision, and the weight will stand or fall on the reasons set forth in the opinion. *Newton*, 209 F.3d at 455.

The ALJ's explanation for not giving any probative value to the medical opinions of Plaintiff's treating physician is that:

> [A] treating source opinion that the claimant is disabled or meets a listing are on issues reserved to the Commissioner.

> * * *

> The record fails to reveal a confirmed diagnosis of systemic lupus erythematosus during the relevant period of this decision. In her Interrogatories, Dr. Beard describes the claimant's medical history as including optic neuritis. On June 30, 1991, the visual fields were full and visual acuity was 20/40 bilaterally. I find Dr. Beard's assessment is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is inconsistent with the other substantial evidence of record. Therefore, under the guidelines contained in 20 C.F.R. § 404.1527(d)(2) and Social Security Rulings 96-2p and 96-5p, the claimant's treating source assessments are given no probative value.

According to the Appeals Council, the ALJ not only relied upon the opinions of the ME, he "basically adopted Dr. Eppstein's opinion." (Tr. 578 ¶ 5.) The ME is an expert who did not examine the claimant but who heard and reviewed the medical evidence and was qualified to offer an opinion. *See Richardson v. Perales*, 402 U.S. 389, 396 (1971). Although the United States Supreme Court has approved the use of an ME; nevertheless, the ALJ must evaluate the ME's opinion in accordance with the regulatory criteria for weighing medical opinions. *See* 20 C.F.R. § 404.1527(d)(1)-(6). For an ALJ to properly rely on the testimony of an ME, the testimony must be supported by the medical evidence of record. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (recognizing that an ALJ should not rely on a medical expert's inaccurate, erroneous, or internally inconsistent testimony regarding the medical evidence). When a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician, his or her conclusions do not provide substantial evidence as a matter of law. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980). *See*

18

*Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Johnson v. Harris*, 612 F.2d 993, 996-98 (5th Cir. 1980).

Agency policy provides that medical opinions about what an individual can do despite a severe impairment should "be based on the medical source's records and examination of the individual; i.e., their personal knowledge of the individual."  SSR 96-5p.  The Commissioner may accord greater weight to the opinion of a non-examining ME than that of a treating or examining physician only if it is "based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  SSR 96-6p. The extensive record in this case contains no comprehensive medical report from specialists on Plaintiff's impairments.

An ALJ may call upon an ME to "gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record."  SSR-96-2p.  The ALJ must "make every reasonable effort" to re-contact the treating source for additional information or clarification of opinion before rejecting the opinion of a treating source in favor of another.  *See* 20 CFR §§ 404.1512(e), 404 1527(c)(3); *see also* SSR 96-2p & 96-5p.  The ALJ did not re-contact the treating source here.

If an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p.  Social Security Rulings are binding on the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 361 n.7 (5th Cir.  1993).  "As a general rule, where the rights of individuals are affected, an agency must follow its own procedure, even where the

internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660

F.2d 116, 119 (5th Cir. 1981) (per curiam) (citing *Morton v. Ruiz*, 415 U.S. 199 (1974)).

Furthermore, "[s]hould an agency in its proceedings violate its rules and prejudice the result, the

proceedings are tainted and any actions resulting from the proceeding cannot stand." *Id.*

> The terms of  SSR 96-9p define sedentary work as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no
> more than 10 pounds at a time and occasionally to lift or carry articles like docket
> files, ledgers, and small tools.  Although a sedentary job is defined as one that
> involves sitting, a certain amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met. "Occasionally" means occurring
> from very little up to one-third of the time, and would generally total no more than
> about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an
> 8-hour workday. Unskilled sedentary work also involves other activities, classified
> as "nonexertional," such as capacities for seeing, manipulation, and understanding,
> remembering, and carrying out simple instructions.

SSR 96-2p (1996).  Dr. Beard's medical source statement provides:

> [S]ince January 1, 1994, Ms. Schriner: (i) has been unable to stand and/or walk for
> longer than two hours total during an eight-hour workday, (ii) cannot sit in a working
> position for more than two hours total in an eight-hour workday, (iii) must rest for
> "greater than 4 hrs." to manage pain and fatigue – and, further, that a one-hour lunch
> place plus two other 15-minute breaks, would not adequately accommodate her need
> for rest, (iv) can do no lifting other than occasionally lifting up to 5 pounds, (v) can
> rarely or never reach, grasp or finger with her left upper extremity and can only
> occasionally do any of these things with her right upper extremity, and (vi) that these
> things are due to "collagen vascular disease, probably S.L.E."

All of these conclusions are in irreconcilable conflict with the ALJ's RFC determination.  The Court

agrees with Plaintiff that the ALJ's reasons for wholesale rejection of Dr. Beard's medical opinions

are the result of legal error and that Plaintiff was prejudiced.  In pertinent part,  ALJ Orr stated:

> Marianne Beard., M.D., opined on December 2,1997 that the claimant would be
> limited to less than the full range of sedentary work beginning January 1, 1994,
> because of collagen vascular disease, probably SLE. Exhibit 21F. Dr. Beard opined
> that the claimant meets the requirements of Listing 4.02 which describes systemic

lupus erythematous [sic] beginning January 1992. Exhibit 20F.  A treating source opinion that the claimant is disabled or meets a listing are on issues reserved to the Commissioner.  Therefore, these opinions are never entitled to controlling weight or special significance; however, it must never be ignored. See Social Security Ruling 96-5p. Controlling weight is given to a medical opinion from a treating source when all of the following are present: the opinion must come from a treating source; the opinion must be a medical opinion; the treating source's medical opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques; and the treating source's medical opinion must also be not inconsistent with the other substantial evidence of record.  20 C.F.R. § 404.1527 and Social Security Ruling 92-2p. The record fails to reveal a confirmed diagnosis of systemic lupus erythematous [sic] during the relevant period of this decision.  In her Interrogatories, Dr. Beard describes the claimant's medical history as including optic neuritis. On June 30, 1991, the claimant's vision was better and that on March 19, 1991, the visual fields were full and visual acuity was 20/40 bilaterally.   I find Dr. Beard's assessment is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence of record. Therefore, under the guidelines contained in 20 C.F.R. § 404.1527(d)(2) and Social Security Rulings 96-2p and 96-5p, the claimant's treating source assessments are given no probative value.

(Tr. 384-85.)  None of these reasons justified his decision to attribute "no probative value" to any of Dr. Beard's conclusions.  A treating-source medical opinion that is not entitled to "controlling weight," as a treating-source opinion, may still be entitled to "great weight and should be adopted" even if it does not meet the test for "controlling weight."  *See* SSR 96-2p.

Retrospective medical diagnoses, uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability, could support a finding of past impairment.  *Likes*, 112 F.3d 189, 191 (5th Cir. 1997).  In such cases, the ALJ must determine whether the illness began before the insured status expired.  *Id*.  Neither the Social Security Act nor the regulations require that the Plaintiff's "medically determinable impairments" be either formally diagnosed or that such diagnosis be "confirmed." Thus, the ALJ erred by relying upon the premise that "the record fails to reveal a confirmed diagnosis of systemic lupus erythematous [sic] during the relevant period of this decision."

The ALJ misapplied the law when he suggested that Dr. Beard's submissions do not contain true "medical opinions" because they are on an "issue reserved to the Commissioner" 20 C.F.R. § 404.1527(e).   Dr. Beard's medical source statement meets the regulatory definition of a "medical opinion."   The terms of 20 C.F.R. § 404.1527(a)(2) provide that "medical opinions are statements from physicians . . .   that reflect judgments about [*inter alia*] . . . what you can still do despite impairment(s), and your physical or mental restrictions."   The ALJ erred by failing to recognize that Dr. Beard's medical source statement complies with the regulations.   *See* 20 C.F.R. § 404.1513(b)(6) (stating that the Agency must request such a statement from each of the claimant's treating doctors). The ALJ cites, but does not follow SSR 96-5p which provides:

> Medical source statements submitted by treating sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment(s). Adjudicators must remember, however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one.

SSR 96-5p, 1996 WL 374183 at *4.   Any one of them deserving of "controlling weight" under the regulations "must [be] adopt[ed]" and incorporated into the ALJ's RFC finding.  *Id*. at *5.  *See also Gittens v. Astrue*, 2008 WL 631215 at *5 (N.D.Tex. 2008) (holding that ALJs must treat medical source statement questionnaires with the same deference due other medical opinions from the treating source).   Similar reasoning invalidates the ALJ's treatment of Dr. Beard's detailed answers to medical interrogatories giving opinions about each of the constituent parts of Listing 14.02, including supporting test results and applicable dates.   Dr Beard did not simply make the conclusory statement that Plaintiff "meets listing 14.02" or merely restate the elements in an affirmative fashion.   Rather, Dr. Beard's answers reflect a careful summary of her specific medical findings that are within the

scope of her specialized knowledge as a physician to interpret.  Dr. Beard's answers are a "medical opinion" under the definition of 20 C.F.R. § 404.1527(a)(2).  The ALJ's duty is to sort and "weigh" competing medical opinions in accordance with the terms of 20 C.F.R. § 404.1527 and SSR 96-2p.

The ALJ's conclusion that Plaintiff's optic neuritis improved in the early 1990s fails to recognize the ME's testimony that lupus waxes, wanes, and manifests itself differently over time.  (Tr. 303.)  Plaintiff never contended that visual acuity was a problem and Dr. Beard's medical source statement reflects none.  Rather, the record reflects that Plaintiff's "*history* of optic neuritis," as reported by Dr. Beard, is material to a diagnosis of SLE.

Plaintiff also argues that the ALJ erred by failing to weigh the factors set forth in § 404.1527(d)(2) after deciding not to give Dr. Beard's medical opinions controlling weight.  Plaintiff claims that the factors should have been considered in deciding what weight, if any, to give the opinions short of controlling weight.  The Court agrees.  The regulation is construed in SSR 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.*  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added); *Newton*, 209 F.3d at 456.  Specifically, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the support for the treating physician's opinions, (4) the consistency of the treating physician's opinion with the record as a

3:08-cv-02042-N   Document 21   Filed 06/22/10   Page 24 of 28   PageID 970

whole, (5) the treating physician's specialization, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(d) (stating that "[u]nless [the Commissioner] give[s] a treating source's opinion controlling weight under paragraph (d)(2) of this section, [the Commissioner] consider[s] all of the [six] factors in deciding the weight [to] give to any medical opinion."). *See also Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998). The Court agrees with Plaintiff that considering the obvious and careful detail evident throughout Dr. Beard's opinion analyzing each element of the Lupus listing, the ALJ's description of it as "not well supported" and "inconsistent with the other substantial evidence" is so conclusory as to be essentially non-reviewable. The ALJ did not follow § 404.1527(d)(2) in form or in substance.

Additionally— and quite significantly— ME Epstein did not testify about—and the ALJ never assessed—Dr. Beard's statement which describes Plaintiff as having depression in addition to SLE. (Tr. 129.) The ALJ never considered whether Plaintiff's depression enhanced the severity of Plaintiff's joint pain, extreme fatigue, and other impairments. (*Id.*) Plaintiff was prejudiced because the regulations require that the total limiting effects of her depressive illness and her other impairments be considered in combination. *See* 20 CFR § 404.1523 & 20 CFR § 404.1545(e).

The ALJ's wholesale adoption of Dr. Eppstein's opinion that obesity was Plaintiff's only severe impairment without citation to "the objective evidence of record" that the ALJ contended fully supported Dr. Eppstein's testimony, together with the ALJ's legal errors in the consideration of Dr. Beard's medical opinions, prejudiced Plaintiff and constitute reversible error.

### Whether Benefits Should be Awarded

The terms of 42 U.S.C. § 405(g) authorize a district court to remand a social security case to the Commissioner in defined situations.  42 U.S.C. § 405(g).  In *Melkonyan v. Sullivan*, the United States Supreme Court expressly held that only two types of remands are possible under § 405(g)– sentence four remands and sentence six remands.  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). With respect to sentence four remands, sentence four of § 405(g) provides that "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).  Thus, a sentence four remand requires the district court to enter a decision on the merits before remanding a case to the Commissioner.  *Melkonyan*, 501 U.S. at 98.

Plaintiff argues that this is a case where benefits should be awarded outright, rather than remanding this case for a fifth disability hearing.[4]  Plaintiff suggests that the Agency's discussion of the mandate rule and law-of-the-case doctrine suggests that, unless the court's remand order explicitly forbids it, the Agency is free on remand to disregard all the ALJ's prior findings and conclusions for any reason, as though the first hearing and decision never occurred.  This Court's Findings, Conclusions, and Recommendation in the first appeal, unless taken out of context, are not reasonably subject to an interpretation that would even suggest a *de novo* decision with respect to Plaintiff's severe impairments.

Courts have authority to reverse with or without remand. 42 U.S.C. § 405(g).  Should the 63-year-old plaintiff's application for DIB, filed November 2, 1995, be sent back through the revolving door for additional years of litigation, or is the evidence sufficient for the District Court to remand

---

[4] Plaintiff's first hearing was before ALJ Seifert, whereas the second, third, and fourth were before ALJ Orr.  The third hearing had a defect in transcription which necessitated the fourth hearing.

for payment of benefits?  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir.1975) (remand to permit claimant to produce further evidence).  Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir.1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).

In *Smith v. Califano*, 637 F.2d 968, 973 n.1 (3d Cir. 1981), the court noted:

> These deficiencies in the findings of the ALJ are not attributable to any error of the claimant . . . . Smith has already had two hearings before an ALJ, followed by two petitions to the Appeals Council, two appeals to the United States District Court ... and an appeal to this court . . . Must an indigent claimant, who has already battled for seven years, wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award? We think not . . . . [T]he majority believes a further remand would be unnecessary and a contravention of fundamental justice.

Plaintiff's situation is similar to that of the litigant in *Smith*.  This is not a case in which the administrative record is incomplete or the Commissioner must gather additional evidence.  The Commissioner has fully developed the record during the fifteen years that this case has been pending, and it is unlikely to change.  Plaintiff is in no way responsible for the delays in this case.  *See Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).  The ALJ has ignored the law of the case and failed to properly consider Plaintiff's severe impairments and treating physician evidence.  The Appeals Council erred by failing to properly consider the new treating physician evidence before it.

26

The record contains substantial evidence that Plaintiff has suffered from severe medically determinable impairments or a combination of severe impairments that have rendered her unable to engage in substantial gainful activity since January 1, 1994.  In sum, substantial evidence dictates that the Commissioner find that  Plaintiff is disabled and entitled to benefits.

### Recommendation

The Court respectfully recommends that the District Court reverse the Commissioner's decision, find Plaintiff disabled, and remand the case for payments of disability benefits from January 1, 1994.

SO RECOMMENDED, June 22, 2010.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).